All right. Excuse me, Ms. Woodard. I am here today on behalf of Walter Woodard. Walter was convicted after a bench trial before Judge White of the first degree murder of Nate Walker, his good friend, Nate Walker. He was sentenced to 38 years in prison, nearly twice the minimum sentence for first degree murder. We're asking, Your Honors, to reduce the sentence to one that's at or close to the minimum, first, because Judge White wrongly refused to find that the mitigating factor of strong provocation was present, and also because he essentially refused to find any rehabilitative potential on the part of the defendant. I'd like to say first that I don't think it's accurate to say that Judge White did not find any serious provocation existed in the course of this offense. What he actually found was that there was a cooling off period, and that was why he didn't think it was an immediate reaction that would reduce the degree of the offense to second degree murder. Well, the interesting thing about the whole thing is, of course, he was sentenced to 45 years the first time, and then this is a reduced sentence to 38 years. It is. And Judge White did talk, not extensively, but significantly about the scuffles that he's had since the sentencing, but still didn't hold those against him. In the gummy tail. Right. Right. Right. So, and still reduced the amount. So I thought that was rather interesting. Well, yeah, and he never really explained why he reduced, well, certainly didn't reduce the sentence because he found provocation, because he said, I am specifically finding no provocation. It's possible, another thing that your Honor did in the original decision was to tell the judge not to consider victim impact statements from other relatives, so those weren't considered. He did make some comments about mitigating factors, that he said Walter was an intelligent and articulate young man, he thought his remorse was sincere, and he did say, I will credit you for not having any further incidents once you went to the DOC. There wasn't any evidence about that. But he didn't really use that. He considered it, I think, in mitigation, but not to the extent that he found that Walter had any rehabilitative potential, because when he set the sentence, what he said was that Walter's conduct was the result of circumstances likely to recur, and that his conduct and character indicated he was likely to commit another offense. And to me, those kinds of findings are at odds with the finding that he possesses rehabilitative potential. And I think it's interesting, I was looking through the judge's comments when he was sentencing him, and I believe the only time he uses the word rehabilitate or rehabilitation is when he's parodying what the defendant said to him, saying, please don't just look to revenge, look to rehabilitation. And that's the only time he said, you asked me to rehabilitate and not do revenge. But he did start out, did he not, by saying, I'm considering everything. And he said he was considering everything, but I guess my point is that what he focused on almost exclusively was punishment, retribution, and deterrence. He never made any findings that Walter possessed any rehabilitative potential. More significantly, to find that there was no strong provocation because there was a cool-enough period that is really not consistent with the concept of what strong provocation is. Can we talk about that for a second? Sure. It seemed to me that on the issue of whether or not there was strong provocation, didn't the trial judge note that the defendant, that Walker had acted violently in the past toward the defendant and in fact had acted violently toward the defendant earlier in the day? So isn't he considering the provocation when he starts addressing that issue? He's considering that what initiated the offense was this provocation. And in fact, I think it was, I think it falls into the classic category of serious provocation that would ordinarily reduce an offense to second-degree murder. But the judge, the state is saying that you can't have strong provocation unless the provocation is direct and immediate. But I think in this situation where Judge White found essentially there was serious provocation initially. He punched him in the face in blue blood, completely without provocation by Walter. He then threatened him with a knife, but Judge White found there was a cool-enough period. So the state is saying, well, you can't have provocation unless the provocation is direct and immediate. First of all, the provocation is certainly direct because it's coming from Nate against Walter. The problem is, if it were immediate, if, as the state's saying, you can only have strong provocation if it's immediate and it immediately follows, the offense immediately follows the provocation, then that would be second-degree murder. So I think the judge is mixing, still mixing up the ideas of serious provocation and strong provocation. Why do you think he's mixing them up? Because he referred to what happened just before? I believe he's saying that there was serious provocation, but that there was a cool-enough period. Right, but he also considered in his sentencing the past interchanges that the two had had and the violence that Nate had shown, correct, towards Walter? Yes, correct. Right, so he went beyond that. But then he ultimately reached the conclusion that there was no provocation. No strong provocation. No strong provocation. Right. Right, so he was entitled to weigh that, was he not? I think he came to the wrong conclusion. I think he came to the wrong conclusion. Well, that's the position you're arguing, but we can't re-weigh the findings and the factors that the trial judge considered and weighed himself or herself, right? That's not our job is to re-weigh them. Well, I'm not so much saying you should re-weigh them as to say that for him to find there was no strong provocation is just inconsistent with the facts of this case and inconsistent with other cases that have applied that terminology. Well, you're looking at that with respect to a particular time frame. I believe from what I've read, was he not looking at it with respect to what transpired during that time frame? And what transpired was the fact that they both went out of the apartment together to buy cigarettes. When they were leaving, they were laughing, they were joking, and when they came back, they were amiable at that point when they came back into it. So rather than him necessarily focusing on the moment before this happened, I believe, as I read it, he was focusing on what happened, what their behavior was vis-a-vis each other during that period of time. During the subsequent period of time after the attack? After Walker's attack on the victim earlier. Sure, and I think he was looking at that to determine whether it was second-degree murder or not. And he said, I believe, the fact that he said, well, he said several times, both when he found the defendant guilty and when he re-sentenced him, he said several times there was a cooling-off period here. Why is that erroneous? Oh, no, I'm not saying it's erroneous. I'm saying that he still seems to be making the judgment that unless you have direct and immediate – direct provocation and an immediate reaction, that you can't have provocation. Did he say that? He said there's no provocation. Well, I thought he got hinged on the fact, as Justice Genevieve has alluded to, there was this altercation. The trial just recognized the violent altercation earlier in the day, recognized in the past, and he hones in on the fact that, as I understand it, both the defendant and Walker actually apologized to each other. They split and said that. They joked around. They left. Why wouldn't there be a cooling-off period? Oh, I'm not disputing it. If there wasn't a cooling-off period, it would have been second-degree murder. What I'm saying is the judge seems to be conflating the idea of was there direct provocation with an immediate response, and if there wasn't, then you can't have any kind of mitigation in the sense of whether there was provocation. There still was provocation leading up to this offense. It just wasn't sufficient to reduce the degree of the offense. And there are continuums. I think the case at the state site, and I'm not sure how it's pronounced, but a damsel? That's where they talk about the provocation has to be direct and immediate. There was a case where the defendant broke into a neighbor's home, tried to sexually assault her, and asked the judge to consider as provocation that, as a child, he had been sexually abused by his family.  The victim never did anything to him. And it wasn't immediate either. It was something that happened decades ago. We have direct provocation here, we just don't have an immediate response. Although I do have to say, when I was reading through this record and reading through the various hearings, there does also seem to be, in the evidence which the judge heard, there seems to be this undercurrent that there's also things going on, and maybe not even undercurrent, maybe even more actually just in your face, that there were things going on also between Nate and his girlfriend, that he had hit her once, he had sprayed her face. There was some argument that was starting at the time that the stabbing took place. And other courts have looked at not only what's happening with respect to the defendant and the victim, but what's going on with other things in the defendant's presence. And that would be something like Margentina is a case that I cited. Margentina is really almost a mirror image of our case here. The defendant in Margentina was 18 years old. Walter's 20 years old. He had a horrific childhood. Walter's had a horrific childhood. The provocation in Margentina didn't even rise to the level of what we have here, which was a serious provocation. In Margentina, the provocation was that the victim was, he harassed and made fun of the defendant. And what led to this shooting, and it was just a shooting of the victim at point-blank range, was that he was abusing the stepfather's dog. And the court said, that's still provocation. So to say that because there was a cooling-off period, we no longer have provocation, I don't think it's supported by the case law. Let me ask you this. In Margentina, the defendant was a teenager, correct? He was 18, yes. And the defendant was not a teenager here. No, 20. And the sentence in Margentina was? 50 years at 50%. So this was 12 years shorter than Margentina. Well, except for the fact that he's serving 100% of the sentence and Margentina was serving 50% of the sentence. Well, we can't relitigate what the crime should have been. Based upon what he said, while he is stabbing the victim, he's saying, you're dead and you won't be able to hurt me or hurt Riley, I think, again. So I'm sure that there was maybe a self-defense or a defense of other that was there. There might have even been a proffered second degree. I don't know. Yeah, it was a bench trial. So ultimately, there was a first-degree finding. So we have to live with that. Now, within the parameters of first degree, what should the judge consider? And I'm not sure that necessarily I would have said there was a cooling-off period, but how can I find that the judge was wrong because he said that? That's his opinion as opposed to maybe a statutory finding. But I think there's a distinction between whether there was a cooling-off period and whether there was provocation preceding the offense. And I think it has to be on a continuum, too. I mean, if this had happened, say, on a Sunday, and a week later the defendant's standing outside in the alley lying in wait, you know, it's hard to say at that point that there was provocation. I think time comes into play there, too. Well, I think Judge White could have also looked at this, if we're supposing, in the sense that this type of violent behavior was typical for these two, went back a lot of different years in terms of their interchanges with each other. Well, let me... And so he could have thought, well, you know, maybe it's not provocation because of the type of behavior it started out to be. It wasn't unusual for those two to go at it with each other. I don't think there's any evidence that Walter went at it with Nate. I think the evidence was all that Nate, on several occasions, had committed unprovoked offense. Right, but Walter had come back. They're brothers, they're in a relationship. Well, that's my point. And I think the other point with regard to rehabilitative potential, I believe you take issue with part of Judge White's statement that that's not my job and who I am when the defendant said, well, you asked for a lighter sentence, you asked me to rehabilitate and not to do revenge. You know, I think there are several meanings that that could have, one of which certainly could be that the court saw its responsibility as coming up with a sentence that takes into account both rehabilitation and punishment but not the concept of revenge. So that's certainly a meaning that could be attributed to that comment. It could be, but for the fact that I, again, I reread the judge's comments, I found it very enlightening that right after the judge says, you asked me to rehabilitate and not do revenge, that's not what my job is, he immediately goes into, you said you're sorry for what happened, you asked me not to judge you on what happened in the jail, but that was presented to me, so I have to consider that. I also have to consider what happened on May 27th of 2008. So what he's talking about is not what the rehabilitative potential is, he's talking about, and then he goes on to say, this was a violent and aggressive act against your friend, that you were violent and aggressive in the jail. All he's talking about seemingly, and he talks about mom and grandma being in the audience. Well, he also talked about his behavior in DOC not being the same as it was in jail. So he said he would assume. He said he would assume. He didn't hear any evidence to the contrary, so he would assume. So I don't know that he was crediting him very much for that. But Your Honor, if I may conclude, we would ask, the judge, again, improperly refused to find that the factor of provocation was present. He also considered nothing in terms of rehabilitation, and so we would ask that this sentence be reduced. Thank you. Ms. Joseph. Good afternoon, Your Honors. May it please the Court. Also. I'm Victoria Joseph, representing the people of the state of Illinois. I think the one thing that we really need to make the distinction here is the difference between refusing to consider mitigation and considering the mitigation and rejecting it. Well, what did the judge identify in mitigation other than he assumed that nothing had happened in DOC? What else was even talked about? On the report of proceedings, page 1631, he sensed remorse from the defendant. I know he went over the criminal history, and I believe there was a statement that it was not that bad. He graduated high school, was in good health. The system had completely failed him as a juvenile, and he recognized the fact that he had not heard any further violent, aggressive acts presented from 2011 until 2000. That would have been August of 2011 would have been the last report presented. Until 2014, the sentencing hearing was December of 2011. So what you seem to be saying is the trial judge considered these factors of rehabilitation but perhaps did not assign as much weight to it as some others might have assigned. That is correct, Your Honor. It appears that the defendant is basically arguing this court to reweigh the factors and is assigning greater value to these mitigating factors than his rehabilitative potential and is attributing the 7-year reduction at resentencing to only the fact that there were several victim impact statements that weren't considered this time. But the fact that the court did go through mitigating factors in considering the sentence and then reduced it 7 years, he did consider these mitigating factors. So there was not a refusal to consider them. Did he also mention that the defendant had mental health issues? I believe that went into some of the system failing him and the mental health issues and I think he specified that good health was good physical health as opposed to the mental health. So yes, the court did recognize the problems that had gone on. His 28 placements throughout foster care seemed also very concerned that the system had failed him as a juvenile. But recognized, though he made it through high school in spite of that, he had not shown much since then. While he had employment, he did not maintain jobs and really wasn't showing that much productiveness post-high school. There were some family members, like mother and grandmother or something like that. Since he was in the DCFS system for a significant period of his youth, was he adopted or was there termination or what was the situation? I am not quite sure, Your Honor. But it sounded like he, I remember reading 25 foster homes. His parents were both killed. Yes, they were both murdered. I think so. It must have been a grandparent. I don't know that he was ever adopted or he just aged out. Well, it sounded like he and Mr. Walker sort of aged out together. Maybe one was a little older than the other. So his finishing high school may be attributable to the fact that DCFS pushed him or one of the foster homes pushed him. But those weren't the most successful years in his life. No, they were not. They were not. And the court did consider that there hadn't been any episodes since. However, the court did have to consider that you had a domestic battery, juvenile adjudication up to the point of August of 2011. There were acts of violence being committed by the defendant. So that was appropriate for the judge to consider in finding a likelihood of this recurring. In comparison to a case such as Calhoun where you have a mother going on a rampage after learning someone raped your child, the appellate court found that at that point that would have been a circumstance that was not likely to reoccur. Here we do have evidence. However, I'm hopeful that since 2011 that he is improving. The state believes that was taken into consideration in reducing the sentence to 38 years, which was in the lower half of the sentencing range. And the court did go ahead and follow your directive and consider whether there was strong provocation. It's determined that there was none. And as your Honor pointed out, considered their entire history and both that and leading up, the direct two hours leading up to the offense or by the time the police arrived in response to the offense. So the court did find that there was a cooling off period. And I believe the quote was that everything was fine or everything that was OK. They had reconciled.  The defendant said that he accepted his apology. And then Riley observed the defendant walking, probably pacing, said moving back and forth across the dining room, and then appeared in the bedroom with a knife. Well, counsel's point, I believe, with respect to this cooling off period is that the trial judge looked at this issue of provocation too narrowly and that it should be, and he didn't look at it in its broad sense. He looked at what was the definition of serious provocation to reduce murder to a second degree as opposed to strong provocation, which is a broader concept. How do you respond to that? The State disagrees. Serious provocation has been defined as four specific acts, the substantial injury or assault, mutual quarrel or combat, illegal arrest, or spousal adultery. And strong provocation encompasses a wider range of conduct than that. However, both the Third District and this Court, Third District in Merritt, this Court in Adamczyk, both said that even in the matter of strong provocation, it does need to be direct and immediate. That was defining strong provocation, not serious provocation. So they're looking at your direct and immediate provocation, whether there was a cooling down period, did you have an opportunity to retreat or did you bring the fight back to the person? Did you have an opportunity to contact police or some other member of the public? Here he went to a gas station. At that point, could have addressed anybody. And also looking for the spontaneity and premeditation of the act and the intent to kill, which his statements immediately following the attack that you don't have to worry anymore, he's dead, do go to he did intend to kill him. And that was also a very disproportionate reaction to, while we're not commending Mr. Walker on his actions toward defendant, to come in and stab him 14 times with six fatal stab wounds, to being punched in the nose after saying, we're good, I'm a soldier, and forgiving him. The judge's finding was not an abuse of discretion. Are there any other questions? Then the State asks this Court to affirm the sentence. Thank you, Ms. George. And Ms. Gelnick, if you wish to respond. The only thing I want to point out is if you read through Judge White's comments at the second sentencing hearing, it appears that he's still doing the same thing with conflating serious provocation with strong provocation and finding that because there wasn't serious provocation because of this cooling off period, it wasn't sufficient to reduce it, then there can't be any provocation. He says at the end of the sentencing hearing, I do not find that you acted under strong provocation. I want that clear on the record. Everything was fine. There was a substantial period of time had left, no provocation. First of all, it really wasn't a substantial period of time. I think at best it was an hour. But when he says no provocation, he's essentially saying because there's a cooling off period, you can't have this money going backwards. And I think it's interesting that at one point during the sentencing hearing, I don't have the specific citation, but he says he recognizes that incident in the morning with Alan, Nick Walker, was the spark that lit the fuse. To me, that's saying that was the provocation. There wasn't the facts weren't such that I could reduce the degree of the offense, but it's still provocation. And he specifically refused to consider that in litigation. Well, then why did he make the comment that he was telling the appellate court he considered whether or not there was strong provocation? Are you saying he didn't get the point of the remand? I'm a little confused. I thought you just said that he said. I think he made the same mistake that he made the first time. Well, did he use the words I find no strong provocation? Right. Then why wouldn't he have considered it then? No. What I'm saying is he made the mistake of finding there was no strong provocation with reference to there being a cooling off period. And the fact that there's a cooling off period does not mean there was not provocation, strong provocation. Thank you. Thank you. And thank you for your arguments today. We will take the matter under advisement. We will issue a decision in due course. We will now stand adjourned pending our conversation with our guests. And you can turn off the recorder.